UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLE HENRY, | ) 1:06-cv-00554-AWI-SMS |
| Plaintiff, | ) FINDINGS AND RECOMMENDATION RE: |
| v. | ) PLAINTIFF'S SOCIAL SECURITY |
| | ) COMPLAINT (DOC. 2) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

Plaintiff is proceeding in forma pauperis and with counsel and is seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying an application for benefits. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C.§ 636(b) and Local Rule 72-302(c)(15). The matter is currently before the Court on the parties' briefs, which have been submitted without oral argument.

I. Procedural History

On September 4, 2003, Plaintiff applied for Disability Insurance Benefits (DIB), alleging disability since May 23, 2003, due to pain in her hands, wrists, thumbs, and shoulders, muscle spasms, chronic tendinitis, inability to stand for very long,

1

swelling and stiffness in the hands, asthma, allergies, irritable bowel syndrome, depression (A.R. 83-86, 90-108, 134-37.) After Plaintiff's claim was denied initially and on reconsideration, Plaintiff requested a hearing. Plaintiff appeared with an attorney and testified at a hearing before the Honorable Sean Techan, Administrative Law Judge (ALJ) of the Social Security Administration (SSA), which took place on August 24, 2005. (A.R. 236-301, 12.) On December 30, 2005, the ALJ denied Plaintiff's application for benefits. (Id. at 12-19.) Plaintiff appealed the ALJ's decision to the Appeals Council. After the Appeals Council denied Plaintiff's request for review on March 22, 2006, Plaintiff filed the complaint in this action on May 4, 2006. (Id. at 4-6.) Briefing commenced on March 9, 2007, and was completed on April 9, 2007.

## II. Scope and Standard of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it may

not simply isolate a portion of evidence that supports the decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See, Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th Cir. 1987).

Here, the ALJ concluded that although Plaintiff, a fifty-seven-year-old person with a high school education and three years of college, suffered severe impairments of obesity, osteoarthritis, degenerative joint disease with multiple arthralgia, and chronic obstructive pulmonary disease that did not meet or medically equal one of the listed impairments;

1  Plaintiff had the residual functional capacity to lift and carry
2  ten pounds occasionally and frequently; stand and walk two to
3  four hours in eight and sit six hours, but was limited from
4  forceful and frequent use of the lower extremities, limited to
5  occasional climbing, balancing, stooping, kneeling, crouching,
6  crawling, and reaching overhead with both arms; and should avoid
7  fumes, dusts, gases and uneven terrain. Mentally she was able to
8  follow work rules, relate to coworkers, deal with the public,
9  interact with supervisors, function independently, and
10 understand, remember, and carry out detailed job instructions as
11 well as maintain personal hygiene and demonstrate reliability.
12 Plaintiff could perform her past relevant work as a legal
13 secretary and secretary as performed and as generally performed
14 in the regional and national economy. Thus, Plaintiff was not
15 disabled. (A.R. 13, 18.)
16         III. Disability
17         In order to qualify for benefits, a claimant must establish
18 that she is unable to engage in substantial gainful activity due
19 to a medically determinable physical or mental impairment which
20 has lasted or can be expected to last for a continuous period of
21 not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A).
22 A claimant must demonstrate a physical or mental impairment of
23 such severity that the claimant is not only unable to do the
24 claimant's previous work, but cannot, considering age, education,
25 and work experience, engage in any other kind of substantial
26 gainful work which exists in the national economy. 42 U.S.C.
27 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th
28 Cir. 1989). The burden of establishing a disability is initially

4

on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 20 C.F.R. § 404.1520 (1997);[1] 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

---

[1] All references are to the 2005 version of the Code of Federal Regulations unless otherwise noted.

1  With respect to SSI, the five-step evaluation process is
2 essentially the same. See 20 C.F.R. § 416.920.
3  IV. <u>Pulmonary Impairment Found Not to Meet a Listing</u>
4  Plaintiff argues that the ALJ's finding that Plaintiff's
5 chronic obstructive pulmonary disease did not meet or equal
6 listing 3.03(B) was not supported by substantial evidence in the
7 record.
8  Plaintiff's history of treatment for chronic obstructive
9 pulmonary disease included acute exacerbation in June 2004 which
10 involved being seen in the emergency room and which Dr. Wageneck
11 noted was accompanied with abuse of tobacco. Plaintiff was
12 treated with medication and an inhaler and was strongly advised
13 to quit smoking due to lung disease and risks of surgery if she
14 continued to be a smoker. (A.R. 204, 232-35.) Plaintiff continued
15 to smoke at that time. (A.R. 232.) She experienced hypoxia and
16 acute exacerbation again on August 18, 2004, resulting in the use
17 of oxygen and transfer to the Selma Hospital for further
18 treatment. (A.R. 200.) Plaintiff was treated with continued
19 oxygen therapy and medication, and her condition stabilized in
20 September 2004. (A.R. 198-99.) In August, Plaintiff stated that
21 she had quit smoking about a month before. (A.R. 227-31).
22 Plaintiff was given emergency room treatment on October 16, 2004,
23 for dyspnea, with a diagnosis of bronchitis treated with
24 medication, and thereafter resolving (A.R. 196); she again
25 received treatment at the Selma emergency room for sinusitis and
26 cough in January 2005. (A.R. 192.) Plaintiff stated she had
27 stopped smoking six months before. (A.R. 221-25, 223.) In April
28 2005, Dr. Wageneck's progress notes reflected Plaintiff had acute

6

exacerbation of her COPD and was prescribed QVAR twice a day and nebulizer treatements four times a day (A.R. 190); in July 2005, an oxygen request was faxed to Pacific Pulmonary Services (A.R. 189).

Plaintiff states that she was again hospitalized on April 7, 2005, but the progress notes for this date indicate treatment for followup for COPD, with an assessment of acute exacerbation, but not any emergency hospitalization. (A.R. 191 [progress note], 190 [typed progress note].)

In his decision, the ALJ recited Plaintiff's history of treatment for chronic obstructive pulmonary disease (COPD), including acute exacerbation in April 2005 and oxygen treatment in 2005; emergency treatment on June 7, 2004, October 16, 2004, and January 11, 2005; and hospitalization beginning August 18, 2004, until August 21, 2004. (A.R. 14-16.) The ALJ noted that in June 2004, Plaintiff was still smoking despite advice to quit. (A.R. 14.) The ALJ recited Plaintiff's position that she met listing 3.02 for chronic obstructive pulmonary insufficiency; however, the ALJ stated that Plaintiff provided no pulmonary function tests to support the position. (A.R. 15.) Further, although Plaintiff suffered attacks requiring emergency treatment and/or overnight hospitalization, these phenomena had not occurred at the frequency required by listing 3.03. Although Plaintiff had been receiving in-home oxygen, the ALJ noted Plaintiff's testimony that she continued to smoke five cigarettes per day, and although she was trying to quit, it was exceptionally hard because she lived in a house with others who smoked. (A.R. 15, 16, 257-58.)

7

Contrary to Plaintiff's argument, the record supports the ALJ's conclusion that Plaintiff's condition did not meet the listing. Listing 3.03(B), which pertains to asthma, requires:

> B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physical intervention, occurring at least once very two months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

Section 3.00(C) provides in substance that when a respiratory impairment is episodic in nature, as can occur with exacerbations of asthma, the documentation for exacerbations should include available hospital, emergency facility and/or physician records and clinical and laboratory findings on presentation, such as the results of spirometry and arterial blood gas studies. Further, § 3.00(C) defines attacks of asthma as referred to in paragraph B of 3.03 as follows:

> ...prolonged symptomatic episodes lasting one or more more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational brochodilator therapy in a hospital, emergency room or equivalent setting.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 3.03. It further provides that hospital admissions are defined as inpatient hospitalizations for longer than 24 hours, and it states that the medical evidence must include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the section expressly states that the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction. Id.

8

1     Here, the regulation requires incidents either every two
2 months, which was not shown by the evidence, or six times within
3 a year. Plaintiff had only five incidents (three emergency room
4 visits and one in-patient hospitalization counting as two
5 incidents, for a total of five) in the year following June 7,
6 2004. Plaintiff argues that the episode of April 7, 2005, counts
7 as an incident. However, the record of April 7, 2005, consists of
8 progress notes from United Health Centers, and not from a
9 hospital; although acute exacerbation of COPD was part of the
10 assessment, Plaintiff had presented herself not for emergency
11 treatment, but rather for followup on left hip pain and on COPD
12 after running out of Doxepin and starting to have allergy
13 symptoms with worsening dyspnea. (A.R. 190.) There was scattered
14 wheezing but no rhonchi or rales. Peak flow was 90, 100, 110,
15 with pulse oximetry 93 per cent on room air. The plan was to
16 continue QVAR, 80 meg. two puffs twice a day, and Albuterol and
17 Atrovent nebulizer treatments four times a day, with Singulair 10
18 mg. daily and Doxepin 25 mg. at bedtime. (Id.) There is no
19 indication that Plaintiff received any intensive treatment,
20 required or otherwise, in a hospital, emergency room, or
21 equivalent setting. Further, the evidence supports the ALJ's
22 finding that Plaintiff continued to smoke cigarettes despite
23 medical advice to the contrary. Although Plaintiff testified that
24 Dr. Whiteneck had said that second-hand smoke was worse for her
25 than smoking, it was clear that Plaintiff had been advised to
26 quit smoking and simply had not complied. (A.R. 258.)
27     One who claims upon review that the ALJ erred in not
28 determining and finding that a claimant's combined impairments

met a listing must offer a theory of how the impairments combined to equal a listed impairment and point to evidence that shows that his combined impairments equal a listed impairment. <u>Lewis v. Apfel</u>, 236 F.3d 503, 514 (9th Cir. 2001). It is Plaintiff's burden to establish that his impairment met a listing. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987). Mere diagnosis of a listed impairment is not sufficient to sustain a finding of disability; there must also be the findings required in the listing. <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 416.925(d). Generally, specific medical findings are needed to support the diagnosis and the required level of severity. 20 C.F.R. §§ 404.1525(c)-(d), 416.925(c). The Commissioner is not required to state why a claimant failed to satisfy every different section of the listing of impairments; rather, it is sufficient to evaluate the evidence upon which the ultimate factual conclusions are based. Otherwise, an undue burden would be put on the social security disability process. <u>Gonzales v. Sullivan</u>, 914 F.2d 1197, 1200-01 (9th Cir. 1990).

Therefore, the Court concludes that the ALJ's finding concerning Plaintiff's COPD was supported by substantial evidence, and it was articulated in a manner consistent with the pertinent legal standards and sufficient to permit meaningful review.

Finally, Plaintiff argues that because Plaintiff had other impairments consisting of degenerative joint disease with multiple arthralgia, osteoarthritis, and obesity, she necessarily had an impairment that was equivalent to a listed impairment. However, the ALJ evaluated her other impairments, concluding that

1 Plaintiff was not receiving the types or amounts of medication
2 normally associated with a chronic pain syndrome or treatment at
3 a pain clinic. Further, her treating physician had prescribed
4 weight loss, cessation of smoking, and exercise, and had not
5 precluded Plaintiff from working. (A.R. 16.) Further, the ALJ
6 noted that Plaintiff's obesity had not affected her ability to
7 work and thus did not appear to create greater severity to her
8 level of disability when considered in combination with her
9 asthma/chronic obstructive pulmonary disease. (A.R. 16.)
10 Plaintiff cites to no evidence contradicting these findings and
11 does not specifically challenge the sufficiency of the evidence
12 in this regard.

     V. <u>Failure to Find that Plaintiff's Depression was Severe</u>

14      Plaintiff attacks the ALJ's conclusion that Plaintiff
15 suffered from depression/anxiety that was not severe. (A.R. 13.)
16 Plaintiff argues that there is substantial evidence in the record
17 of Plaintiff's depression, pointing to a treating physician's
18 prescription of the anti-depressant Doxepin and references to
19 Plaintiff's depression. (A.R. 172 [mention in April 2003 of
20 depression with anxiety in assessment, but no findings]; 173
21 [mention in January 2003 of depression in assessment,
22 prescription for Wellbutrin, but no findings]; 199 [reference in
23 August 2004 to prescription for Doxepin 50 mg. at bedtime due to
24 insomnia and itching, and to limit her evening nebulizer
25 treatment if breathing was good and she was having trouble
26 sleeping, but no findings]; A.R. 274-75 [testimony of Plaintiff
27 that she took Doxepin for anxiety and depression, but she did not
28 talk about depression with Dr. Whiteneck, the doctor who was

11

prescribing the medication for depression, because due to a lack of transportation, Plaintiff could not go to mental health].)

At step two, the Secretary considers if claimant has "an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). This is referred to as the "severity" requirement and does not involve consideration of the claimant's age, education, or work experience. Id. The step-two inquiry is de minimis screening device to dispose of groundless claims. Bowen v. Yuckert, 482 U.S. 153-54 (1987). The Secretary is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of [sufficient medical] severity." 42 U.S.C. § 1382c(a)(3)(F).

Basic work activities include the abilities and aptitudes necessary to do most jobs, such as physical functions of walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

An impairment or combination thereof is not severe when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. An impairment is not severe if it does not significantly limit a

claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a); Soc. Sec. Ruling 85-28; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289-90 (9th Cir. 1996).

Here, the ALJ noted Plaintiff's treatment for depression (A.R. 14) and the opinion of state medical consultants Drs. Archimedes Garcia and Brian Ginsburg, who in July 2004 opined that Plaintiff's affective disorder was brought on by physical problems, which were mostly within normal limits, and was not severe. (A.R. 14, 174-78.) The ALJ also noted Plaintiff's argument that she had been limited to simple, repetitive tasks (opinion of ALJ pursuant to a previous application [A.R. 179]), but the ALJ then stated:

> However, I note that two months after the prior decision, the claimant went back to work as a legal secretary, earning monies consistent with substantial gainful activity and continued to perform this skilled work for three years until she turned 55 in 2003. By her work activity she has demonstrated that she is capable of performing work involving complex instructions and greater than simple, repetitive tasks. Further, while her treating source prescribed an anti-depressant (Exhibit B12E), she is not receiving any mental health treatment to suggest a significant worsening since she stopped working. Also, her past relevant work from 2000 to 2002 is sedentary work, which is within her exertional limitations.

A.R. 16.) Further, the ALJ noted that based on the evidence before him, Plaintiff's treating source had not precluded Plaintiff from working. (A.R. 17.) Finally, the ALJ expressly stated that the psychiatric assessment of nonseverity rendered by the state agency medical consultant was appropriate and consistent with the objective medical evidence. (A.R. 17.)

Substantial evidence supports these findings. (A.R. 246-48

13

[Plaintiff testified having worked for over two years, until 2002, for law firms as a legal secretary and paralegal, performing word transcription, mail and word processing, copying, intake, editing of criminal appeals, answering telephones, and filing].)

Further, the finding did not constitute legal error. Social Security regulations provide that although all medical and vocational evidence will be considered in determining whether an applicant has the ability to engage in substantial gainful activity, employment during any period of claimed disability may be probative of a claimant's ability to work. 20 C.F.R. §§ 404.1571, 416.971; Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). If the SSA finds that an applicant was able to work at the substantial gainful activity level, it will find the applicant not disabled. Id. Even if the work was not substantial gainful activity, it may show that the claimant was actually able to do more work than was actually done. Id.

Here, the ALJ considered work that ended before the claimed period of disability and that post-dated a previous finding of limitation to simple, repetitive tasks. The highly skilled work done by Plaintiff at the three law firms was inconsistent with the claimed limitation to simple, repetitive tasks. The ALJ drew reasonable inferences from the evidence, as he was entitled to do. See, Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

Further, Plaintiff does not cite to any evidence of record inconsistent with the ALJ's characterization of the record as lacking any opinion from a treating source that Plaintiff was

disabled.

Finally, although the other evidence was sufficiently extensive and weighty to support the ALJ's findings, the state agency physicians' opinions were based on clinical findings of physicians who had examined Plaintiff and were not inconsistent with any opinions rendered by such physicians. As such, they constituted additional substantial evidence supporting the ALJ's finding. The findings of a nontreating, nonexamining physician can amount to substantial evidence so long as other evidence in the record supports those findings. Saelee v.Chater, 94 F.3d 520, 522 (9th Cir. 1996).

It is concluded that the ALJ did not err in finding that Plaintiff's depression/anxiety was not severe. Plaintiff did not meet her burden of establishing that her depression had anything other than a minimal effect upon her ability to perform basic work activities.

VI. Duty to Contact a Consultative Psychiatrist

Plaintiff argues that the ALJ erred in not seeking a consultative psychiatric evaluation to determine the effect of Plaintiff's mental impairment on Plaintiff's ability to work. However, the duty to develop the record arises where the record before the ALJ is ambiguous or inadequate to allow for proper evaluation of the evidence. 20 C.F.R. §§ 404.1512(e) and 416.912(e); Mayes v. Massanari, 262 F.3d 963, 968 (9th Cir. 2001). Here, there was no ambiguity or inadequacy; rather, the Plaintiff simply failed to present evidence warranting a finding that her impairment was severe.

/////

VII. <u>Recommendation</u>

Pursuant to the foregoing analysis, it is concluded that Plaintiff's arguments should be rejected. The ALJ's decision was reached by the use of proper legal standards and is supported by substantial evidence.

Accordingly, it IS RECOMMENDED that

1. Plaintiff's social security complaint BE DENIED; and

2. Judgment for Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Carole Henry, BE ENTERED.

This report and recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   January 24, 2008**            /s/ Sandra M. Snyder
                              UNITED STATES MAGISTRATE JUDGE